## CHISM v. TUCKER.

## Opinion delivered November 20, 1911.

ELECTIONS—EFFECT OF FAILURE TO HOLD.—Where an election was not
held at the proper time, the court is not authorized to declare what
would have been the choice of the voters in case an election had been
held.

Appeal from Pulaski Circuit Court, Second Division;
*F. Guy Fulk*, Judge; affirmed.

### STATEMENT BY THE COURT.

This was a suit for the usurpation of the office of justice of
the peace of Eagle Township, Pulaski County, Arkansas, upon
the following complaint:

"Plaintiff for cause of action states that he was, on the
12th day of September, 1910, duly and legally elected to the
office of justice of the peace for Eagle Township, in the county
of Pulaski and State of Arkansas. Plaintiff would further
state that he was so duly and legally elected as such justice of
the peace for said township; that the defendant herein is exer-
cising and usurping the office to which this plaintiff was so
elected, the said Tucker never having been at any time or
place legally elected to said office which he is so usurping.
Plaintiff would further state that on said 12th day of September
the judges of election appointed by the county election com-
missioners to hold the election in said Eagle Township opened
the polls at the precinct in said township, but at that time
announced that no tickets had been received to be used by the
voters in said township. Plaintiff would further state that there
had and did, during the day, appear upon the ground at the
said voting precinct, for the purpose and with the intention of
voting for this plaintiff, more than two hundred and fifty (250)
voters, whereas there were only two hundred and eighty (280)
legal electors in the township, as shown by the list of legal
electors printed and furnished by the county election commis-
sioners. Plaintiff would further state that, had the tickets
been received and the voters all permitted to have voted, the
defendant would not have received exceeding twenty-five
(25) votes, and that this plaintiff would have received the re-
mainder, which would have been a large majority of the votes
cast at said election. Plaintiff would further state that when

it was learned that no tickets were to be had a large number of the electors of said township, all of whom were legal electors thereof, prepared their tickets by writing them out and presented them to the judges of the election, asking permission to cast their said ballots so prepared and presented; that all of said ballots so prepared were prepared so as to vote for the plaintiff herein; that more than fifty (50) of the legal electors of said township so prepared their tickets. Plaintiff would further state that when said voters had so prepared said tickets some twenty-five (25) in number actually presented their tickets to the judges of said election in said township on the said 12th day of September, 1910, and requested that said tickets be received and deposited in the ballot box to be by said judges counted, but that the said judges refused to receive any of said tickets and threatened the voters who were presenting their tickets with violence if others attempted to cast their vote, as a result of which many who had actually prepared their tickets did not present them to the judges. Plaintiff would further state that the defendant herein received no votes at all at said election, not a single ballot having been offered to be deposited for him.

"Wherefore plaintiff would pray, all the matters and things herein stated being considered, that the election in said Eagle Township be inquired into as per chapter 155, Kirby's Digest, § 7981 to § 7989, and that the defendant herein be ousted from the office which he is so usurping, and that this plaintiff be adjudged to be entitled to the same, and that he have judgment against the said defendant for the fees and emoluments which he has collected from said office and for costs and all and proper relief."

A general demurrer was interposed to the complaint, which was by the court sustained, and, the plaintiff declining to plead further, the cause was dismissed, from which judgment an appeal was taken.

*Bratton & Fraser,* for appellant.

Where a voter has made an honest effort to comply with the law with reference to casting his ballot at an election, even though his efforts were unsuccessful, he is not disfranchised; neither can he be disfranchised through a violation of the law by the election officials in regard to the tickets. 15 Cyc.

353; *Id.* 345; 30 N. Y. Supp. 265; 193 Ill. 195. Where, as in this case, the officers designedly failed to provide the electors with tickets, and the electors then prepared tickets themselves and presented them to the judges, and the judges refused to accept such tickets, their votes so prepared should be counted, and the party for whom the majority of the ballots so presented were cast was in law elected to the office. 32 Ark. 553; 10 Am. & Eng. Enc. of L. 705; McCrary on Elections, § 131; 71 Ark. 413; 42 Ark. 124.

*J. H. Harrod,* for appellee.

The law is that no ballot shall be received or counted in an election except the ballot provided by the county election commissioners. Kirby's Digest, § 2789. Without such ballots there could be no legal election. The complaint stated no cause of action, and the demurrer was properly sustained.

KIRBY, J., (after stating the facts). It is true said complaint alleges that the plaintiff was duly and legally elected to the office, and, notwithstanding such election, that the defendant is exercising and usurping the office to which he was elected, without at any time or place ever having been legally elected thereto. But the complaint goes further, and sets out the facts fully upon which the cause of action is founded, and said allegations can not be considered more than a statement of legal conclusions which are in no way supported by the statement of the facts, constituting the cause of action as alleged.

The complaint, when its allegations are considered, can not be held to be more than a statement that if an election had been held in said township on the date alleged, as the law requires, and if the votes of the electors, as tendered to the election judges upon other than ballots furnished by the election commissioners under the law, had been in fact received and counted, and none others polled, then he would have been elected.

Nowhere does it state that an election was held, and it is expressly alleged that the polls were regularly opened by the election judges in the township, who announced that no tickets had been received to be used by the voters of the township, and that certain electors, twenty-five in number, of the two hundred and eighty residing in the township, actually prepared a ticket, voting for him, and presented it to the said

judges, requesting that such ticket be received and deposited in the ballot box to be counted by them, "but that the said judges refused to receive any of said tickets," and that "the defendant received no votes at all at said election, not a single ballot having been offered to be deposited for him."

The law prescribes how elections shall be held, and requires the election commissioners to provide printed ballots, all alike, one hundred and fifty in number, for each fifty, or fraction thereof, of electors in each township or ward of an incorporated city or town according to the number of votes polled in the last preceding election, and "no ballot shall be received or counted at any election to which this act applies, except it be provided by the county election commissioners, as herein prescribed." Section 2789 and 2790, Kirby's Digest.

Said commissioners are required to furnish such ballots to the sheriff or other election officer three days before the election, who is required to deliver them to the judges of the election when they have assembled at the voting place for the purpose of holding the election. Sections 2787 to 2794. One of such ballots is to be given to each elector upon entering the polling room, after at least one of the judges has written his name or initials on the back of it, and no person is permitted to carry a ballot outside of the polling room, it being a misdemeanor to do so. Sections 2718 and 2721. And "no ballot shall be received from any elector or deposited in the ballot box which does not have the name or initials of at least one of the judges indorsed on the back of it." Section 2820.

Penalties are denounced against all election officers who wilfully neglect or omit to perform the duties prescribed by the election laws, or who do anything which is by it forbidden, and it is made a felony for "an election officer * * * to steal, destroy, secrete, or otherwise make way with any election ballots, * * * either before or after the closing of the polls," punishable by imprisonment in the penitentiary for not less than two nor more than seven years. Sections 2824, 2825 and 2826.

None of these provisions of the law were complied with. The judges in the first instance were not supplied with the official ballots, or had made way with them contrary to the law, and could not and did not furnish them to the electors, neither

could they receive from the electors any ballots other than official ones and as prescribed and regularly provided in accordance with the terms of the law. Nor did they attempt to do so, but declined to receive ballots not officially prepared and presented by a few electors upon which plaintiff's name had been written by each of them as they had the right to do. In fact, they did not hold any election, and expressly declined to do so, because of the fact that they had not been supplied with the official ballots necessary for the purpose.

Article 3, section 11, of the Constitution provides: "If the officers of any election shall unlawfully fail or refuse to receive, count or return the vote or ballot of any qualified elector, such vote or ballot shall nevertheless be counted upon the trial of any contest arising out of said election."

But it can not be contended in this proceeding, which is not a contest of an election, that said ballots, as presented to the election judges on the day of the election shall be counted and will entitle plaintiff to the office under said provision of the Constitution, for it was not only not unlawful to refuse and fail to receive such ballots and count them, but unlawful for said judges to do so.

The voice of the people is supreme, and not to be thwarted, nor their choice overridden, when it is expressed under the form, of law as made for their protection and the security of their ballots and the prevention of fraud in the expression of such choice. But it can not be said that their voice has been heard and rejected and their will thwarted and disregarded when they have not spoken at all, no election having been held.

The machinery provided furnishes ample opportunity for a fair expression and correct record of the people's choice when the election officers do their duty as they are presumed to do, and the law requires they shall, under heavy penalties for failure, but their failure to hold an election does not authorize the court in a proceeding of this kind to declare what might have been the choice of the voters of any township or county, in case such election had been held and the people permitted to vote, as it is alleged they desired to do.

The judgment is affirmed.